STATE OF CONNECTICUT *v.* LAUREL CREST ACADEMY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 17-1518

Argued April 1—decided September 6, 1963

*John Q. Tilson, Jr.,* of New Haven, for the appellant (defendant).

*Louis J. Mattioli,* assistant prosecuting attorney, for the appellee (state).

LEVINE, J. The defendant was convicted in a trial to the court of a violation of § 3 of the Bristol building zone ordinance entitled "Use Regulations Controlling Residence Zones" and has appealed. It assigns error in the court's conclusion that upon all the evidence it was guilty beyond a reasonable doubt.

The evidence may be summarized as follows: The defendant is the owner of premises in Bristol which were purchased in 1960 and on which it conducts a boys' preparatory school providing instruction and education from the ninth through the twelfth grades. The school has 135 students and 11 faculty members, most of whom reside on the premises. The school consists of nine buildings. Brewster Hall, the building allegedly in violation of the zoning ordinance, is a one-family house which is used as a dormitory for twelve students and one faculty member; it is located on land which is near the main buildings of the school but does not adjoin any other land of the defendant. All of the buildings owned by the defendant are located in an A residence zone. The zoning regulations of the city

of Bristol are of the permissive type, and in an A residence zone one-family dwellings are permitted. Schools also are permitted, as are such accessory uses as are located on the same lots as the permitted uses and are customarily incident thereto. Bristol Bldg. Zone Ordinance §§ 3.A.3, 3.A.6 (1931, as amended).[1]

Since this proceeding is criminal, the rules of proof applicable to criminal cases govern. "[T]he city has not proceeded by means of a civil action to recover the penalty. On the contrary, it has elected to proceed by information charging a violation of the ordinance, and upon conviction, the defendant may be fined, imprisoned or subjected to both fine and imprisonment. It is, therefore, a criminal or penal action, placing the burden upon the People of proving clearly the defendant's guilt." *People* v. *Margolies,* 166 Misc. 135, 138 (N.Y.). Therefore, in the construction of the ordinance and in the weighing of evidence, the defendant should receive the benefit of every reasonable doubt.

---

[1] "Sec. 3   Use Regulations Controlling Residence Zones.

A.   In an 'A' Residence Zone, no building or premise shall be used, and no building shall be erected or altered which is arranged, intended, or designed to be used except for one or more of the following uses:

1. A one-family detached dwelling house.
2. Churches.
3. Schools or Public Libraries.
4. Publicly owned parks and playgrounds.
5. Farming, truck gardening, nurseries, or greenhouses may be conducted in undeveloped sections of an 'A' Residence Zone as a business. In such section of the city, open roadside stands for the sale of products principally produced on the premises may be built under a temporary permit as provided for in Sec. 16, Art. 5, if located so that ample parking space off the traveled highway is provided.
6. Accessory uses customarily incident to the above uses, the term 'accessory uses,' however, not including a business or any building or use not located on the same lot with the building to which it is accessory, nor a garage or group of garages for more than three motor vehicles when not occupied by motor vehicles owned by the occupant of the premises."

The proof required is of a much higher degree than the proof required for a civil action. Had this been an action for an injunction, the city of Bristol would be required to prove its case by a preponderance of the evidence—here, the state must prove its case beyond a reasonable doubt—and the ordinance would be construed under the ordinary rules concerning zoning ordinances rather than under the rules concerning criminal ordinances or statutes.

The lower court found that Brewster Hall, a dormitory, was not a school within the meaning of the zoning ordinance but an accessory use and therefore in violation of the ordinance since it was not located on the same lot as the school. Our Supreme Court of Errors has defined the word school as "a generic term, denoting an institution for instruction or education." *American Asylum* v. *Phoenix Bank,* 4 Conn. 172, 177. "Indeed the term 'school' alone, according to American usage, more generally denotes the collective body of pupils in any place of instruction, and under the direction and discipline of one or more instructors." *State* v. *Gager,* 28 Conn. 232, 235. "The question as to the meaning of the word 'school' as used in the ordinance is a matter of its construction and therefore one of law." *Langbein* v. *Board of Zoning Appeals,* 135 Conn. 575, 579. Laurel Crest Academy is a school within the meaning of *American Asylum* v. *Phoenix Bank,* supra; *State* v. *Gager,* supra; and *Langbein* v. *Board of Zoning Appeals,* supra. The question to be decided is whether Brewster Hall, a dormitory and a part of Laurel Crest Academy, falls within the interpretation of the term "school" as used in the Bristol ordinance.

It becomes necessary to decide whether a dormitory is included as a part of a school or whether it

falls into some other category such as an accessory use. " 'Dormitory' was originally a large sleeping room in a monastery, containing a number of beds for monks. For many years it has been customarily used in reference to a building or large room belonging to a school or college in which students sleep and sometimes board and study." *Western Theological Seminary* v. *Evanston,* 325 Ill. 511, 519. Laurel Crest Academy is a preparatory educational institution as distinguished from a college. However, the physical makeup of a college and that of a preparatory institution differ only as to size and the type of education provided and are generally the same in all other respects. The preparatory school does what its name implies, prepares students for college. Under the definition of "school" of our Supreme Court of Errors, an institution of instruction or education, be it school, preparatory school, college, university, or children's educational camp, whether parochial, private or public, as a matter of law may be included within the meaning of the term. *American Asylum* v. *Phoenix Bank,* supra; *State* v. *Gager,* supra; *Langbein* v. *Board of Zoning Appeals,* supra.

In *Western Theological Seminary* v. *Evanston,* supra, 518, where the zoning ordinance allowed schools and colleges in district A (a district similar to the Bristol zone A), the court held as follows: "There is no sound argument against the proposition that the right to erect and use buildings for schools and colleges includes all such buildings and such uses as ordinarily form a part of the buildings, equipment and plant of a college." It follows that an ordinance which provides for the construction of a school in a residence zone would encompass the right to erect buildings, equipment and the plant which ordinarily form a part of the preparatory school. In *People ex rel. Clarkson Memorial*

*College of Technology* v. *Haggett,* 274 App. Div. 732, 734 (N.Y.), which involved the taxability of a dormitory, the New York Appellate Division held that the dormitory was not taxable and stated as follows: "The evidence is that the exclusive use to which the relator devoted said premises after they had been fitted therefor was to house students and/or members of its faculty and administration staff, and that such use was one which was incident to and in direct furtherance of an expanded program in higher education . . . ." In *Schueller* v. *Board of Adjustment,* 250 Iowa 706, 710, it was held that a dormitory to be erected on a vacant lot which adjoined the college campus and was in a single-family residence zone was an educational use of the premises.

In *Yale University* v. *New Haven,* 71 Conn. 316, 328, the court said: "It was impossible for the legislature to express its meaning more clearly than in the language of [Rev. 1888] § 3820: 'Buildings occupied as colleges.' If it had been said: 'Dormitories, dining-halls and other buildings occupied as colleges,' the meaning would have been the same, and the amplification would have added nothing to the precise certainty of the language used." The court there gave a meaning to "dormitory" which designated it as a college. Should the interpretation be any different because the instant case involves a preparatory school rather than a college, or because here a zoning matter is in question rather than a tax matter? To interpret "dormitory" in zoning matters as not being an integral part of a college or school and as not having an educational purpose would be contrary to the ruling of the court in the aforementioned case.

In *Yale University* v. *New Haven,* 17 Conn. Sup. 166, 175, where the issue was taxability of dormi-

tories occupied by married students, the court held that this use of the property by the university "is incident and necessary to, and has a direct connection with, its corporate purposes [education]." "The principle that the exemption of educational institutions extends only to property used for the purposes of the institution is frequently applied in the case of endowed universities, colleges, academies, etc. Dormitories and dining halls furnished by a college for the use of its students are clearly exempt." 51 Am. Jur. 598, Taxation, § 622. "Broadly speaking, it seems that the test of taxability in this regard is not whether a landlord-tenant relationship exists or whether the educational institution derives some incidental revenue from the property but rather whether, on the one hand, the occupancy promotes the educational interests of the school, or, on the other, merely a commercial relationship has been established." *Yale University* v. *New Haven,* 17 Conn. Sup. 166, 177.

The intent to use the word "schools" in the general sense is emphasized by the fact that in the Bristol ordinance the word is not modified and is immediately followed by the words "or Public Libraries." Since Laurel Crest Academy is a school within the meaning of the Connecticut definition of the word, and since its dormitory does have an educational purpose within the meaning of the cases cited, it follows that Brewster Hall comes within the use of the word "schools" as used in the ordinance and is not an accessory use.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that it be discharged.

In this opinion KOSICKI and DEARINGTON, Js., concurred.