MONICA POSSEKEL, a Minor, by R. Amelia Possekel, her Mother and Next Friend, Plaintiff-Appellant, *v.* LOUISE P. O'DONNELL, d/b/a Lad & Lassie Nursery and Kindergarten, *et al.*, Defendants-Appellees.

First District (4th Division)    No. 76-1184

Opinion filed July 28, 1977.

William M. Doty, Jr., of Chicago, for appellant.

Barbara H. Fredericks, of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Joseph B. Lederleitner, of counsel), for appellee Louise P. O'Donnell.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The trial court in this case granted a summary judgment for the defendant O'Donnell,[1] holding that the defendant's "nursery and kindergarten" was a school within section 24—24 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—24), and that, therefore, following *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705, and *Merrill v. Catholic Bishop* (1972), 8 Ill. App. 3d 910, 290 N.E.2d 259, and *Cotton v. Catholic Bishop* (1976), 39 Ill. App. 3d 1062, 351 N.E.2d 247, the defendant could not be held liable for its negligence which resulted in injury to the minor plaintiff. The plaintiff has appealed contending basically that such day-care center or nursery school is not a "school" as the term is commonly understood and that in any event it is not governed by section 24—24 of the School Code. While we are unable to unqualifiedly agree with the plaintiff's first contention, we do agree with the second and reverse.

The minor plaintiff filed suit against the defendant, alleging that while attending the defendant's nursery as a paid pupil she was injured because of certain negligent acts of the defendant. The defendant at first denied that she had been negligent but subsequently moved for summary judgment on the grounds that the complaint sounded in negligence and under the authority of *Kobylanski v. Chicago Board of Education* the defendant could only be held liable for injuries resulting from wilful and wanton misconduct. The motion was granted. The plaintiff moved for reconsideration on the grounds that *Kobylanski* was not applicable since the "school" was in fact a day-care center not operated by any agency of the State and thus section 24—24 of the School Code was inapplicable. The motion was denied. No affidavits were filed by either party, but the defendant had admitted in interrogatories that the establishment was licensed as a day-care center. Under section 4 of the Child Care Act of 1969 (Ill. Rev. Stat. 1975, ch. 23, par. 2214), if the Department of Children and Family Services is satisfied that the facility and responsible persons

---

[1] The First National Bank and Trust Company of Evanston being the defendant's executor was added after her death. For simplicity, we shall refer to O'Donnell and her executor as "the defendant."

reasonably meet the standards set for the type of facility, the department shall issue a license designating the type of child-care facility. Among the types of facilities are nursery schools (section 2.12), kindergarten (section 2.13) and day-care centers (section 2.09). Despite the name of the establishment in this case (Lad & Lassie Nursery and Kindergarten), it was licensed neither as a nursery school nor a kindergarten.[2]

## I.

Depending on facts as hereinafter developed, the defendant's establishment may or may not constitute a "school" as that term is commonly understood. The term "school" is a generic one which has numerous meanings. (*Crist v. Bishop* (Utah 1974), 520 P.2d 196.) Thus it has been defined as an institution for instruction or education (*State v. Laurel Crest Academy* (1963), 2 Conn. Cir. Ct. 294, 198 A.2d 229; *State ex rel. Fronton Exhibition Co. v. Stein* (1940), 144 Fla. 387, 198 So. 82; *Lawrence v. Cain* (1969), 144 Ind. App. 210, 245 N.E.2d 666; also *Bastendorf v. Arndt* (1939), 290 Mich. 423, 287 N.W. 579 (means little more than institution with educational purposes or activities); as an institution for teaching children or an establishment for imparting education (*Village of East Hampton v. Mulford* (Sup. Ct. 1946), 188 Misc. 1037, 65 N.Y.S. 2d 455); as an institution for education and training (*Crist v. Bishop* (Utah 1974), 520 P.2d 196); as a place where instruction is imparted to the young (*Livingston v. Davis* (1951), 243 Iowa 21, 50 N.W.2d 592; *People v. Levisen* (1950), 404 Ill. 574, 90 N.E.2d 213 (and number of persons being taught does not determine whether a place is a school); *Board of Education v. Ferguson* (1941), 68 Ohio App. 514, 39 N.E.2d 196; *Lawrence v. Cain* (1969), 144 Ind. App. 210, 245 N.E.2d 663; *Withers v. Pulsaski County Board of Education* (Ky. 1967), 415 S.W.2d 604); as a place of instruction in any branch or branches of knowledge (*Livingston v. Davis* (1951), 243 Iowa 21, 50 N.W.2d 592; *Langbein v. Board of Zoning Appeals* (1949), 135 Conn. 575, 67 A.2d 5; *Alexander v. Phillips* (1927), 31 Ariz. 503, 254 P. 1056); as a place for systematic instruction in any branch or branches of knowledge (*City of Chicopee v. Jakubowski* (1964), 348 Mass. 230, 202 N.E.2d 913); as a place in which persons are instructed in the arts or trained for their stations in life (*Dewey v. Montessori Educational Center, Inc.* (1970), 185 Neb. 791, 178 N.W.2d 792); as a place in which persons are instructed in art or any species of learning (*People v. Collins* (Co. Ct. 1948), 191 Misc. 553, 83

---

[2] The defendant was originally licensed in 1959 at which time there were no separate licenses for nursery schools and kindergartens. Such license was, however, only valid for one year from date of issuance. Accordingly, the 1969 Act which became effective January 1, 1970, has been controlling on this particular establishment since 1970 when the current license expired.

N.Y.S. 2d 124); as a place where instruction is imparted to the young, or any place or means of discipline, improvement, instructions, or training (*Flagg v. Murdock* (1939), 172 Misc. 1048, 15 N.Y.S. 2d 635); as an institution consisting of a teacher and pupils, irrespective of age, gathered together for instruction in any branch of learning, the arts or the sciences (*City of Chicago v. Bethlehem Healing Temple Church* (1968), 93 Ill. App. 2d 303, 236 N.E.2d 357; *Weisse v. Board of Education* (Sup. Ct. 1941), 178 Misc. 118, 32 N.Y.S. 2d 258; *State ex rel. Shoreline School District No. 412 v. Superior Court* (1959), 55 Wash. 2d 177, 346 P.2d 999; *Benvenue Parent-Teacher Ass'n v. Nash County Board of Education* (1969), 4 N.C. App. 617, 167 S.E.2d 538); as an institution of learning below a college or university, a place of primary instruction (*State ex rel. Dick v. Kalaher* (1911), 145 Wis. 243, 129 N.W. 1060 (term generally referring to common or public school); *Lawrence v. Cain* (1969), 144 Ind. App. 210, 245 N.E.2d 663); as a place where systematic instruction in useful branches is given by methods common to schools and institutions of learning, which would make the place a school in the common acceptation of the word (*Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 146 N.E.2d 73 (tax exemption of schools); *People ex rel. McCullough v. Deutsche Evangelisch Lutherische Jehovah Gemeinde Ungeanderter Augsburgische Confession* (1911), 249 Ill. 132, 94 N.E. 162; *In re Estate of Goetz* (Probate Ct. 1966), 8 Ohio Misc. 143, 35 Ohio Op. 2d 398, 218 N.E.2d 483 (tax exemption of "schools"); and as an institution of learning wherein a course of general education and mental training is offered for children similar to that offered in public schools. *State ex rel. Church of the Nazarene v. Fogo* (1948), 82 Ohio App. 238, 79 N.E.2d 914, *aff'd* (1948), 150 Ohio St. 45, 79 N.E.2d 546.

Ignoring the last definition which was obviously dictated by the fact the case involved a vehicle tax exemption for school buses, we can see that the common denominator in all these definitions is that the place be one where instruction is given, generally to the young. Indeed, precisely this definition was accepted by the court in *People v. Levisen* (1950), 404 Ill. 574, 90 N.E.2d 635, where the court held that private schooling in the home could institute a "private school" within the compulsory school attendance law (Ill. Rev. Stat. 1947, ch. 122, par. 26-1). An appellate court in Illinois (*City of Chicago v. Bethlehem Healing Temple Church* (1968), 93 Ill. App. 2d 303, 236 N.E.2d 357), adopting a similar definition, has held an institution giving classes in religious instruction twice a week to be a "school" within the scope of an ordinance requiring the installation of an approved sprinkler system.

The plaintiff cites *Rivkind v. State ex rel. Gibson* (1947), 159 Fla. 553, 32 So.2d 330, which without discussion held that a kindergarten nursery was

not a school within an ordinance prohibiting the issuance of a liquor license for a place of business within 1000 feet of a school. We have been unable to find any other case where a nursery school kindergarten was held not to be a "school" where that term was not limited in any way.[3] To the contrary, the court in *Duncan v. Entrekin* (1955), 211 Ga. 311, 85 S.E.2d 771, held that the use of a home for kindergarten purposes was permissible under a zoning ordinance permitting "schools" in a residential district, since a kindergarten is a school for children of very tender years. Likewise, the court in *People v. Collins* (1948), 191 Misc. 553, 83 N.Y.S.2d 124, held that a woman who took into her home each weekday morning up to 14 children of preschool age and kept them until noon did not violate the zoning ordinance which permitted schools in residential areas. A Montessori school was held to constitute a "private elementary school" in *Dewey v. Montessori Educational Center, Inc.* (1970), 185 Neb. 791, 178 N.W.2d 792, also a zoning case. And a privately owned and operated nursery school for children aged two to five was held to come within a zoning ordinance permitting "private elementary schools, taking children up to and not exceeding the age of 14." *Livingston v. Davis* (1951), 243 Iowa 21, 50 N.W.2d 592.

■■ ■ This does not mean that as a matter of law defendant's establishment is a school. The establishment is not licensed either as a nursery school or as a kindergarten. Instead, it is licensed under section 4 of the Child Care Act as a day-care center. A day-care center, as defined by section 2.09 of that act (Ill. Rev. Stat. 1975, ch. 23, par. 2212.09), can be with or without stated educational purposes. In its motion for summary judgment, the defendant made no allegation that the establishment did engage in instructions nor has the defendant produced any evidence tending to show that it was. Apparently the defendant merely relied upon the fact the establishment was called a nursery school, and the plaintiff in the complaint was called a student. But merely calling an institution a school, a child a student, does not make either one. Nor was the burden on the plaintiff, as the defendant has argued on appeal, to prove the establishment was not a school. Rather, if the defendant wanted the trial court to rule as a matter of law that no action in negligence would lie, it was for the defendant to establish all the facts giving rise to the defense. (23 Ill. L. & Prac. *Judgments* §77 (1959).) Accordingly, absent any proof that the defendant's establishment did engage in instruction, the

---

[3] Of course a nursery school would not constitute a grade school (*Chicago v. Sachs* (1953), 1 Ill. 2d 342, 115 N.E.2d 762), or an educational institution having a curriculum the same as that ordinarily given in public schools. (*Parish of Jefferson v. Carl* (La. App. 1967), 195 So. 2d 401; also *Heard v. City of Dallas* (Tex. Civ. App. 1970), 456 S.W.2d 440, ordinance itself distinguishing between schools and day nurseries and kindergarten.

defendant, even if we merely adopt the common meaning of the term "school," was not entitled to summary judgment.

## II.

Nevertheless, we hold that, as a matter of law, whether or not the defendant's establishment can be considered a "school" at common law, it does not fall within the perimeter of section 24—24 of the School Code and therefore does not enjoy the protection extended by *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705; *Merrill v. Catholic Bishop* (1972), 8 Ill. App. 3d 910, and *Cotton v. Catholic Bishop* (1976), 39 Ill. App. 3d 1062, 351 N.E.2d 247. It must be remembered that the sole question before the court is not whether the defendant's establishment constituted a school, but whether it comes within the scope of section 24—24 of the School Code which provides that:

> "Teachers and other certified educational employees shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the school and the school children, they stand in the relation of parent and guardian to the pupils."

This provision has been construed by *Kobylanski, Merrill* and *Cotton* to create immunity for injuries due to merely negligent acts.

■■ A statute in derogation of common law must be narrowly construed. (34 Ill. L. & Prac. *Statutes* §176 (1958).) At common law schools did not enjoy any special immunity by being schools, although at one time they may have been immune from suit if they were governmental institutions or charitable institutions. (The defendant is neither.) Accordingly, this court cannot find that this statute created an immunity from negligence for day-care centers and nursery schools not run by a school system unless the language of the statute clearly requires such a finding.

The statute in question is in the School Code. The School Code does not concern itself with nursery schools and kindergartens unless they are run by a school system. Nursery schools and kindergartens not run by the school system are governed by the Child Care Act. By its express provisions the Child Care Act does not govern nursery schools and kindergartens which are part of a private or public school system. Conversely, it is logical to conclude that the dichotomy was intended to remain throughout and that provisions of the School Code were not intended to apply to nursery schools, etc. not part of a school system. And if the School Code does not apply to such nursery schools and

kindergartens, it would be unreasonable to conclude that a single section from the School Code does. Rather, it is much more reasonable to conclude that section 24—24 was meant to apply, as do all other sections of the School Code, to those schools governed or at least affected by the School Code and not to enterprises which are exclusively governed and controlled by a completely separate act. The legislature when it enacted the present Child Care Act was aware of the immunity provided for school teachers under the School Code. Had it wished to extend the same immunity to day-care centers, nursery schools and kindergartens run for profit it easily could have done so.

Furthermore, the language of the statute specifically applies only to "teachers and other certified educational employees." The word "other" must mean that the teachers must also be certified. But, while the School Code does provide for the issuance of early childhood certificates (Ill. Rev. Stat. 1975, ch. 122, par. 21—2.1), and elementary school certificates, which includes kindergarten (Ill. Rev. Stat. 1975, ch. 122, par. 21—3), there is no indication in the Child Care Act of 1969 that certification of the personnel working in the facilities is required. Nor has the defendant made any claim that either she or any other employee in the establishment was certified. Absent any such allegation, the statute under its express term cannot be invoked.

We are aware that the court in *Merrill v. Catholic Bishop* (1972), 8 Ill. App. 3d 910, 290 N.E.2d 259, and *Cotton v. Catholic Bishop* (1976), 39 Ill. App. 3d 1062, 351 N.E.2d 247, extended the effect of section 24—24 to cover parochial schools on the ground that following *Haymes v. Catholic Bishop* (1968), 41 Ill. 2d 336, 243 N.E.2d 203, it would be an arbitrary classification to treat public schools and nonprofit private schools differently. Personally, we have some doubt that a defendant has standing to raise the question that another enjoys an immunity which it does not, and thus obtain an immunity which did not exist at common law and which was not granted by the legislature. But we need not reach that question here.[4] There may well be such similarities between a public school system governed by the School Code and a nonprofit private school system which is at least affected by the School Code in the ordering of its curriculum (Ill. Rev. Stat. 1975, ch. 122, par. 26—1), and the way in which teachers are certified as will dictate their equal treatment in such areas as immunity from suit. But there are no such similarities between a public school system and a day-care center run for profit.

[4] In *Haymes* the supreme court did not create an immunity; it found an immunity to be unconstitutional.

320

Accordingly, the judgment of the trial court is reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

DIERINGER, P. J., and JOHNSON, J., concur.